UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM A. REX,<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>      Defendant. | No. CV-06-255-CI<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS |

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (Ct. Rec. 13) and Defendant's Motion for Summary Judgment (Ct. Rec. 15), noted for hearing without oral argument on June 25, 2007. (Ct. Rec. 12.) Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney David M. Blume represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) On June 25, 2007, Plaintiff filed a reply. (Ct. Rec. 17.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS** the matter to the Commissioner for further proceedings. (Ct. Rec. 13.) Defendant's Motion for Summary Judgment is **DENIED.** (Ct. Rec. 15.)

**JURISDICTION**

Plaintiff initially applied for Social Security Income ("SSI")

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 1

benefits in May of 2001, alleging an inability to work since September of 2000 due to Marfan's syndrome, back and foot pain, and shortness of breath. (Tr. 100-103, 108.) The application was denied in June of 2001, and Plaintiff did not request reconsideration. Plaintiff protectively filed a second application for SSI on March 3, 2003. (Tr. 103-106.) He alleged disability since January 30, 1998, due to scoliosis. (Tr. 137.) The application was denied initially (Tr. 42-45) and on reconsideration (Tr. 48-50). Plaintiff appeared before ALJ Paul Gaughen on March 17, 2005. The ALJ heard the testimony of Plaintiff, his spouse, and vocational expert Daniel McKinney. (Tr. 364-397.) The ALJ held a supplemental hearing on November 29, 2005. (Tr. 398-428.) Plaintiff, Plaintiff''s spouse, medical expert Allen Bostwick, Ph.D., and vocational expert Deborah Lapoint testified. The ALJ issued a decision on March 7, 2006, finding that Plaintiff was not disabled. (Tr. 22-32.) The Appeals Council received additional evidence and denied a request for review on August 22, 2006. (Tr. 6-9.) Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) September 7, 2006. (Ct. Rec. 2).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.

Plaintiff was 26 years old on the date of the ALJ's decision. (Tr. 369.) The record indicates that Plaintiff was home schooled by his mother through the sixth, seventh, or eighth grade, and did not

earn a GED. (Tr. 114, 143, 370.) He last worked as a construction worker in 1999 or 2000 but stopped when the business closed and his back could not tolerate the work. (Tr. 108, 371-372.)

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination

of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

    The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform

other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve

conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

At the onset the ALJ elected not to reopen the prior determinations because he found no reason to do so. (Tr. 22.) The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity during any time at issue. (Tr. 23.) At steps two and three, the ALJ found that the medical evidence established that during the relevant time frame, Plaintiff suffered from Marfan's syndrome, a severe impairment, but not severe enough to meet or medically equal one of the Listings impairments. (Tr. 28.) The ALJ found that Plaintiff did not suffer from a severe mental impairment. (Tr. 28.) The ALJ found that Plaintiff's testimony regarding his limitations was not fully credible (Tr. 29), and Plaintiff has the RFC to perform a significant range of light work. (Tr. 29-30.) At step four, the ALJ implicitly found that Plaintiff was unable to perform his past relevant work.  Transferability of skills to other

work was not at issue. (Tr. 30.) At step five, using the Guidelines as a framework, and based on the vocational expert's testimony, the ALJ found that Plaintiff could perform other work, such as cafeteria attendant, production assembler, or recreation attendant. (Tr. 31.) Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 31-32.)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, he argues that the ALJ erred when weighing the medical evidence and assessing credibility. Additional evidence from Plaintiff's treating physician was presented to the Appeals Council but not to the ALJ. (Tr. 362.) Plaintiff contends that the evidence, that his combination of impairments was equivalent in severity to the Listings, requires finding him disabled. (Ct. Rec. 14 at 12-17.)

The Commissioner opposes the Plaintiff's Motion and asks that the ALJ's decision be affirmed. (Ct. Rec. 16 at 7, 15.)

**DISCUSSION**

**A.   Weighing Medical Evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical

findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject and opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).

1. <u>Psychological Impairment</u>

Plaintiff contends that the ALJ erred by finding that Plaintiff did not suffer from a severe psychological impairment. (Ct. Rec. 14 at 12-14.) The Commissioner responds that the ALJ gave specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Pollack's opinion that Plaintiff suffers from a severe mental impairment. (Ct. Rec. 16 at 7-10.)

An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *see Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. S.S.R. No. 85-28 (1985).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 8

Step two, then, is "a de minimus screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. The question on review is whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb*, 433 F.3d at 687; *see also Yuckert*, 841 F.2d at 306.

In this case, the only evidence of a severe psychological impairment was the report of Dennis R. Pollack, Ph.D., following his evaluation on February 21, 2005. (Tr. 280.) Plaintiff told Dr. Pollack he was home schooled through the eighth grade and then stopped his education to work with his father. (Tr. 281, 284.) After conducting testing, Dr. Pollack assessed a pain disorder associated with both psychological factors and a general medical condition, and a learning disorder, nos. (Tr. 284.) He opined that Plaintiff is moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and is markedly limited in the ability to complete a normal workweek and to perform at a consistent pace. (Tr. 286.) The ALJ observed that: (1) prior to Dr. Pollack's 2005 evaluation, Plaintiff had never been evaluated by a psychiatrist or psychologist (even though his current application alleged onset in 2000); (2) Dr. Pollack's test results showed that Plaintiff's full scale IQ was 84, placing him in the low average range of intellectual functioning; and (3) Dr. Pollack considered Plaintiff's MMPI-2 results valid. (Tr. 25.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 9

Dr. Pollack's opinion was contradicted by another examining physician, Thomas McKnight, Ph.D. Dr. McKnight examined Plaintiff on May 9, 2005, less than three months after Dr. Pollack's examination. Plaintiff stopped home schooling in seventh grade. He occasionally consumed alcohol, admitted he used "crank" roughly once a week until five weeks before the evaluation, and smoked marijuana daily until about a year before the evaluation. (Tr. 290, 292.) Plaintiff was recently prescribed hydrocodone and had taken 60 pills within a couple of weeks, as well as 60 tablets of a muscle relaxer during the same period; he had never undergone treatment for substance abuse. (Tr. 290, 292.) Dr. McKnight opined that Plaintiff's overall effort during testing was suspect. (Tr. 294.) He pointed out that Plaintiff displayed pain behavior with a female psychology resident, including verbal comments about his sore back and using his hands for bracing and supporting his weight; however, as the examination continued, with a male psychologist, Plaintiff displayed no pain behavior for the next 90 minutes even though symptoms would be expected to worsen over time. (Tr. 295.) Dr. McKnight theorized that the behavior was caused by some element of malingering or by historic overindulgence by the women in Plaintiff's life. (Tr. 295.) Plaintiff last worked for six months, his longest period of employment, in construction in 1999. (Tr. 292.) The job ended when the company went out of business. Plaintiff had experienced "minor back pain" but denied any other work-related difficulty. He worked as a self-employed mechanic but not since 1999 because his back worsened. (Tr. 292.) After testing, Dr. McKnight opined Plaintiff "is fully capable of pursuing a variety of jobs that involve three-step, repetitive tasks, limited

only by findings from a physical capacity's examination." (Tr. 296.) Plaintiff's motivation for employment "is suspect." (Tr. 296.) Dr. McKnight opined that Plaintiff can sort, load, unload, restock, and package. He assessed 1) a probable language-related learning disorder; 2) rule out abuse of pain medication; 3) some dependent features but no diagnosis; and 4) a GAF of 65-70,[1] excluding physical limitations. (Tr. 296.)

Dr. Pollack's opinion also was contradicted by that of the medical expert, Allen Bostwick, Ph.D., who testified at the hearing on November 29, 2005. (Tr. 405-413.) Dr. Bostwick observed that Plaintiff had never taken psychotropic medication and had never received mental health treatment. (Tr. 405.) Dr. Bostwick pointed out that Plaintiff told Dr. McKnight he attends church weekly, and visits regularly with his parents and neighbors. (Tr. 410.) Dr. Bostwick opined that any mental health impairment was non-severe. (Tr. 411.)

The ALJ's determination that Plaintiff does not suffer from a severe mental impairment is supported by substantial evidence of record: the opinion of another examining physician, Dr. McKnight, the opinion of the testifying psychologist, Dr. Bostwick, and the

---

[1] A Global Assessment of Functioning of 65-70 indicates some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed. (DSM-IV), at 32.
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 11

lack of any mental health treatment.

2. <u>Physical Impairment</u>

Plaintiff alleges that the ALJ erred by rejecting treating physician Daniel Stoop, M.D.'s opinion that he is limited to sedentary work. (Ct. Rec. 14 at 14-15.) Because Dr. Stoop later opined that Plaintiff's impairments were medically equivalent in severity to two of the Listings impairments (Tr. 362), Dr. Stoop's later opinion is addressed below. As noted, the ALJ did not have the opportunity to weigh this evidence.

**B.   Assessing Credibility**

Plaintiff contends that the ALJ erred when he weighed credibility. (Ct. Rec. 14 at 16-17.) The Commissioner responds that the ALJ's findings are supported by substantial evidence and free of legal error. (Ct. Rec. 16 at 11-13.)

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit his testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*,

12 F.3d 915, 918 (9th Cir. 1993). Factors the ALJ may properly consider include claimant's reputation for truthfulness, prior inconsistent statements, unexplained failure to seek medical care or to follow a prescribed course of treatment, and the claimant's activities of daily living. *See Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

In this case the ALJ found that Plaintiff suffers from the severe impairment of Marfan's syndrome (a connective tissue disorder) and associated difficulties, including scoliosis. While there is perhaps some evidence of malingering, no physician, including Dr. McKnight, made the diagnosis. Accordingly, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. The ALJ found a minimum of four reasons to find Plaintiff less than completely credible: (1) claimed limitations are contradicted by previous self-reports, specifically, Exhibits 4E and 6E; (2) no medical signs or laboratory findings support Plaintiff's pain complaints and resulting limitations; (3) Dr. Bostwick noted that Plaintiff took no pain medication when he claimed that pain severely limited his activities; and (4) examining physician Dr. McKnight opined that Plaintiff's effort on standardized testing was suspect. (Tr. 29.)

With respect to the ALJ's reliance on the lack of medical signs or laboratory findings, the undersigned notes that the ALJ did not have the benefit of Dr. Stoop's letter which includes a summary of spinal and lung x-rays and other findings. The ALJ found that Plaintiff suffers from Marfan syndrome, a severe impairment. It is unclear if the additional evidence will change the ALJ's assessment of Plaintiff's credibility.

The ALJ noted Plaintiff's testimony was inconsistent with his earlier reports. In 2005, Plaintiff testified that he can sit for 60 minutes, stand for 15-30 minutes, has problems bending and cannot pick things up off the floor. (Tr. 29.) On June 5, 2001, Plaintiff reported he could walk for an hour, stand for an hour and sit for 6 hours before needing to rest. (Exhibit 4E at Tr. 124.) He could prepare his own meals and do yard work, including pulling weeds, but did it "very little"; he could do housework for 1-2 hours until stopped by pain, and was able to "do everything in moderation" that he could do before his illness. (Tr. 125-126.) He was able to drive for 1-2 hours, watch television or read for 2-4 hours, and sleep 6-9 hours without requiring naps or rest periods during the day. (Tr. 126.) On February 23, 2002, Plaintiff indicated that, on a normal day, he "might do very little yard work or work on my car a little for about an hour or two." He was able to walk, stand and sit for an hour before needing to rest for 30-60 minutes; could drive for an hour, cook, and shop; he could carry light groceries 20 feet and do "light raking and mowing." (Exhibit 6E at Tr. 131-134.) The ALJ properly considered the inconsistencies between Plaintiff's testimony and earlier statements when he weighed credibility.

The ALJ noted Dr. Bostwick's observation that Plaintiff took no pain medication at a time he claimed to suffer disabling pain. (Tr. 29.) This was proper, as the lack of prescription medication is a legitimate factor used to weigh credibility. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ pointed out that Dr. McKnight saw what appeared to be pain behavior. Dr. McKnight also opined that Plaintiff's effort on standardized testing was suspect. (Tr. 29.) The ALJ properly

considered this evidence when he weighed credibility.

The record reveals that, while the ALJ provided several specific and legitimate reasons for finding Plaintiff less than completely credible, one of the reasons relied on, pain complaints which were not supported by medical signs and laboratory findings, may be contradicted by the additional evidence. Dr. Stoop's June 27, 2006, letter specifies the medical signs and findings (spine and lung x-rays, as well as exam findings) he relied on when he opined that the severity of Plaintiff's impairments is equivalent to the Listings. Given the ALJ's reasons and the additional evidence, it does not appear that the ALJ provided clear and convincing reasons for finding Plaintiff less than completely credible. It is unclear after reviewing the record that the ALJ would have made the same determination if he had the benefit of this evidence. Accordingly, remand is required.

**C.   Additional Evidence Submitted to the Appeals Council**

As noted, the ALJ did not have the benefit of Dr. Stoop's June 27, 2006, letter opining that the severity of Plaintiff's impairments considered together was "medically equivalent" to the Listings since December 4, 2001. Dr. Stoop opined that Plaintiff:

> [M]ost probably has Marfan's syndrome, which is a connective tissue disorder that affects many parts of the body, especially the spine, the heart, and the aorta. ...
>
> Mr. Rex's x-rays indicate that he has mild degenerative changes of the inferior sacroiliac joints, bilaterally. There are some end-plate irregularities from L2 to L5-S1 likely representing schmorls nodes with mild degenerative changes. The x-rays indicate Mr. Rex has "straight back syndrome" with a reversal of the dorsal kyphosis and a very narrow A.P. chest diameter. There is scoliosis with an upper thoracic curve toward the right and curving back to the left above the T3-4.
>
> On examination, Mr. Rex has continually had lower

      paraspinal muscle tenderness. On occasion, he has had muscle spasm in the lower spine. He has consistently had moderately reduced flexion and rotation and severely reduced extension. He has had tenderness of other joints. Mr. Rex has consistently complained of significant pain and stiffness through the spine and other joints since I began treating him on December 4, 2001.

      Mr. Rex has also been diagnosed with chronic obstructive pulmonary disease with moderate respiratory symptoms. X-rays of his lungs reveal emphysematic changes.

      Considering all of Mr. Rex's impairments in combination, the severity of this impairments would equal § 1.04, Disorders of the Spine, and § 14.09, Inflammatory Arthritis, since December 4, 2001.

(Tr. 362-363.)

    Plaintiff contends that the ALJ's decision should be reversed and benefits awarded based on the additional evidence. (Ct. Rec. 14 at 15-16.) The Commissioner responds that: (1) the court may remand but should not reverse based on new evidence; (2) to justify remand, Plaintiff must show that the new evidence is material, and arguably must show good cause for failing to produce the evidence earlier; (3) neither materiality nor good cause have been shown; (4) Dr. Stoop's letter does not establish that Plaintiff's symptoms, signs or findings equaled the severity requirements of the Listings; (5) Dr. Bozarth's opinion contradicted Dr. Stoop's; and (6) it is unlikely that the new evidence would have changed the ALJ's mind. (Ct. Rec. 16 at 13-15.)

    The new evidence is material. It is unclear to the undersigned what effect the new evidence would have had on the ALJ's decision. The court has taken into consideration the August 8, 2006, opinion of reviewing agency physician Robert Blee, M.D., that the severity of Plaintiff's impairments is not medically equivalent to the

Listings. (Tr. 10.) Resolving conflicts in evidence is reserved for the ALJ, not the court. On remand the ALJ should also address the issue of possible substance abuse if the ALJ concludes the claimant is disabled. *Bustamante v. Massari*, 262 F.3d 949, 956 (9th Cir. 2001) (only after an ALJ determines a claimant is disabled under the five-step inquiry is there consideration of whether chemical dependency or abuse is a "contributing factor"). See also discussion, *supra*, at 10.

The court expresses no opinion as to what the ultimate outcome on remand will or should be. The fact-finder is free to give whatever weight to the additional evidence is deemed appropriate. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary").

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court concludes that, in light of additional evidence, the ALJ's determination is not supported by substantial evidence. The case is remanded for further proceedings to consider the additional evidence, which was available to the Appeals Council but not to the ALJ, namely, treating physician Dr. Stoop's June 27, 2006, letter. On remand the letter is part of the record.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Motion (**Ct. Rec. 13**) is **GRANTED**. The matter is remanded to the Commissioner of Social Security for further proceedings consistent with this decision and sentence four of 42 U.S.C. §§ 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 15)** is

**DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Plaintiff, and **CLOSE** this file.

DATED July 26, 2007.


                        S/ CYNTHIA IMBROGNO
                    UNITED STATES MAGISTRATE JUDGE